UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ISIAH HENRY and
HEATHER WILLIAMS,

                       Plaintiff,                Civil Action No. 17-11061
                                            Honorable Paul D. Borman
v.                                   Magistrate Judge David R. Grand

CITY OF FLINT, OFFICER MICHAEL
HENIGE, OFFICER SEAN COE, and
OFFICER NIKOLAS WHITE
                              Defendant.

_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART DEFENDANTS' MOTION TO DISMISS [76]**

       Before the Court is a Motion to Dismiss filed by Defendants on August 31, 2018.  [76].

An Order of Reference was entered on September 14, 2018, referring the motion to the undersigned

pursuant to 28 U.S.C. §636(b).  [78].  The motion is fully briefed [84, 85] and the Court heard oral

argument on October 22, 2018.

## I.   RECOMMENDATION[1]

    For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss

**[76] BE GRANTED IN PART AND DENIED IN PART**.

---

[1] As another Magistrate Judge in this district has noted, "There appears to be a split in authority
on whether a magistrate judge should provide a report and recommendation to a district judge on
a Fed. R. Civ. P. 37 motion for sanctions where, as here, the relief sought is dispositive (e.g.,
dismissal) . . . .  Because several judges in this district have viewed a report and recommendation
proper in this scenario, and because this Court sees no need to depart from this practice, this Court
will make a recommendation to the District Court regarding the pending motions."  *Stevenson v.
City of Detroit*, 2012 WL 1883282, at *1 (E.D. Mich. Mar. 30, 2012) (internal citations omitted).

## II.   BACKGROUND

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by Plaintiffs David Henry and Heather Williams against the City of Flint (the "City") and three of its police officers, Michael Henige, Sean Coe, and Nikolas White (collectively, the "Officers," and with the City, "Defendants") in connection with an incident that occurred on the evening of November 23, 2016 at the home Henry and Williams share. (Doc. #30).   Pursuant to a felony warrant, the Officers had arrived at an abandoned home near the Plaintiffs' house in an attempt to apprehend an individual unrelated to Plaintiffs.   Noticing the Officers' lights, Henry went onto his porch to "investigate the source."   He and at least one of the Officers then became involved in a verbal, and later, physical confrontation.   However, despite the fact that much of their interaction was recorded (which recording the Court has reviewed *in camera*), the parties disagree as to who initiated the confrontation and the context surrounding Henry's eventual arrest, such as whether he was "(i) attempting to evade arrest by flight; (ii) posed an immediate threat to the safety of the offers; (iii) and/or actively resisted arrest."   (Doc. #76 at 3.).

Henry alleges that the Officers verbally threatened him and his property, pepper sprayed him upon arrest, failed to buckle him into the rear seat of the squad car, and failed to provide him with medical care when he suffered a seizure on the way to the police station.   (Doc. #30 at 4-7).   The Defendants deny these allegations.   Regardless, as a result of the incident, Henry was charged with disorderly conduct and resisting arrest.   Henry contends that his criminal trial was scheduled for February 7, 2017, but that the Officers "chose to disregard their subpoenas and failed to appear for trial without notifying the court, the prosecutor, or the defense, which resulted in Judge William H. Crawford, II dismissing both charges against Mr. Henry."   (*Id.* at 7).

On April 4, 2017, Plaintiffs filed this action against the Defendants. The operative amended complaint alleges that Henry was subjected to an unlawful and retaliatory arrest and the use of excessive force in violation of his rights under the First and Fourth Amendments to the United States Constitution. (Doc. #30). Plaintiffs also assert a *Monell* claim against the City on the grounds that it failed to properly train and oversee its police officers. (*Id.*). Discovery commenced in earnest, and it has been a challenge for Defendants to obtain full and accurate information from Henry.

On September 7, 2017, Defendants filed a motion to compel discovery and for discovery sanctions because of alleged misrepresentations in Plaintiffs' initial and supplementary discovery responses and during Henry's deposition. On April 4, 2018, the Court issued an Order Granting in Part and Denying in Part Defendants' Motion for Sanctions (the "Sanctions Order"). (Doc. #52). The Court found that sanctions were warranted because Henry showed a "clear and persistent pattern" of failing "to provide truthful information requested of him during discovery" and because such "discovery violations were not substantially justified." (*Id.* at 5, 6). For instance, Defendants asked Henry about any prior "arrests," but he answered the question as if it had asked about any prior "convictions," which were fewer in number. The Court "explicitly admonished" Plaintiffs "that the pattern of discovery violations detailed herein will not be countenanced, and [that] **any further discovery violations or failure to fully cooperate in the progression of this case [] may result in additional sanctions, up to and including dismissal of his case.**" (*Id.* at 6) (emphasis in original). The Court also authorized Defendants to re-depose Henry to clarify the matters he misrepresented in his discovery responses and during his initial deposition.

Defendants, during their second deposition of Henry on August 13, 2018, allegedly discovered that Henry had failed to produce videos of prior police interactions that Defendants had

asked him to produce.  Specifically, Defendants allege that Plaintiffs had only produced two videos[2] in response to the Defendants' Request for Production[3] even though Plaintiffs later admitted during Henry's second deposition on August 13, 2018, to having other recordings of police interactions.  According to the Plaintiffs, they did not turn over these other recordings because (1) they did not think Defendants had asked for them, and (2) a virus had allegedly damaged Henry's computer, rendering him unable to turn over at least certain of the videos he possessed at one time.

Defendants now move to dismiss this case, arguing that Plaintiffs failed to provide requested discovery in violation of their discovery obligations and the Court's prior Sanctions Order.  (Doc. #52).  Defendants argue that the Plaintiffs' "materially false discovery responses" have "compromised the reliability of the fact-finding process" and "incurably infected the proceedings."  (*Id.* at 8, 20, 22).  In the alternative, Defendants move to compel discovery "of all video recordings of police interactions in Plaintiffs' possession."  (*Id.* at 22).

### III.   LEGAL STANDARDS

Defendants ask for sanctions, pursuant to the Court's Sanctions Order and Federal Rules of Civil Procedure 16(f), 26(g), 37(b)(2), 37(d), and 41(b).  The rules cited by Defendants generally permit the court to "issue further just orders" including, *inter alia*, orders dismissing the case or "rendering default judgment" if a party fails to comply with an Order regarding its discovery obligations.  Fed. R. Civ. P. 37(b)(2), 41(b); *see also* Fed. R. Civ. P. 16(f) (authorizing a court to

---

[2] The Plaintiffs produced a seven-second livestreamed video from Facebook and dash-cam footage from the Michigan State Police, both purportedly of a January 8, 2018 incident between Henry and the State Police.  (Doc. #76 at 13; #84 at 4-5).

[3] The Defendants had requested the Plaintiffs "produce all video recordings, audio recordings, and/or photographs that Plaintiff has captured of police interactions . . . [w]ith the exception of what has already been produced in this litigation . . . ."  (Doc. #76 at 13).

issue "any just orders" if a party "fails to obey a . . . pretrial order"), 26(g) ("[T]he court must impose an appropriate sanction" for improper discovery certifications "without substantial justification").

Furthermore, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Independent of the Federal Rules, it also within "a court's inherent power to sanction." *Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 302 (6th Cir. 2016).

Although a "district judge holds a variety of sanctions in his arsenal[,] the most severe of which is the power to issue a default judgment," *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008), "[d]ismissal of an action for failure to cooperate in discovery is a sanction of last resort." *Reg'l Refuse Sys., Inc.v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988). Nevertheless:

> [T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *see also Taylor v. Medtronics, Inc.*, 861 F.2d 980, 986 (6th Cir. 1988) (permitting "the use of dismissals as a sanction for failing to comply with discovery orders because it accomplishes the dual purposes of punishing the offending party and deterring similar misconduct by future litigants"); *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997) ("We have never held that a district court is without power to dismiss a complaint, as the first and only sanction, solely on the basis of the plaintiff's counsel's

neglect . . . . We are loathe to require the district court to incant a litany of the available lesser sanctions.").

In *Regional Refuse*, the Sixth Circuit identified four factors relevant to a motion to dismiss brought pursuant to Fed. R. Civ. P. 37: (1) whether the non-movant's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the movant was prejudiced by the non-movant's failure to cooperate in discovery; (3) whether the non-movant was warned that failure to cooperate could lead to dismissal; and (4) whether less dramatic sanctions were imposed or considered."[4]  842 F.2d at 155.  "[A]lthough typically none of the factors is outcome dispositive, it is said that a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Bradley J. Delp Revocable Trust v. MSJMR 2008 Revocable Trust*, 665 Fed. App'x 514, 521 (6th Cir. 2016) (citation omitted).  Contumacious conduct includes behavior that is "perverse in resisting authority" and "stubbornly disobedient."  *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (quoting *Webster's Third Int'l Dictionary* 497 (1986)).  Such conduct would cause the latter three factors of the *Regional Refuse* to "fade[]" in importance.  *See Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 366 (6th Cir. 1999) (affirming a district court's Rule 41(b) dismissal of a case due to a "clear record of delay or contumacious conduct").

---

[4] Defendants' reliance on *U.S. v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002), for the proposition that the party opposing dismissal has "the burden of showing that [their] failure to comply was due to inability, not willfulness or bad faith," is misplaced.  (Doc. #85 at 1).  This higher standard applies when a party is seeking to reverse a dismissal, as opposed to the instant motion where the moving party is seeking dismissal of the case.  Indeed, *Reyes*' discussion of this "burden" was in conjunction with an appeal filed by a party that had already had his case dismissed as a sanction for improper discovery conduct, and cited to the ruling in *Reg'l Refuse*, 842 F.2d at 154, that "the burden of proof is on the dismissed party . . ."

A simpler test applies when a court relies on its inherent power to sanction, namely, "[d]id the party or attorney engage in conduct that hampered the enforcement of a court order?  If so, did that party or attorney act in bad faith?"  *Williamson*, 826 F.3d at 302-303 (noting that "bad faith includes conduct undertaken with the intention of hampering the enforcement of a court order"). For the reasons discussed below, although Defendants' instant motion presents a close call, ultimately their request for the harshest possible sanction – dismissal – goes too far.  However, a less severe, but still significant sanction of an adverse inference regarding any missing videos is warranted.

## IV.   ANALYSIS

### a.  *Plaintiffs failed to comply with discovery and the Court's order*

Defendants point out that, despite requesting "*all* video recordings, audio recordings, and/or photographs that Plaintiff has captured of police interactions" (emphasis added), Plaintiffs did not produce the requested materials and only admitted to not doing so after sustained questioning during Henry's second deposition.  (Doc. #76 at 6-8; Ex. H, Henry 2nd Dep.).

Plaintiffs claim that email correspondence with the Defendants' counsel "mislead [sic]" them into believing that "Defendants only requested [] two videos" of an event that took place shortly before the discovery request was served, and that "it was not understood by undersigned counsel" that Defendants had "intended . . . to produce such a broad request . . . that undersigned counsel could not have deciphered to begin with."  (Doc. #84 at 4, 8).  However, a review of the salient discovery request and email correspondence shows that Plaintiffs' arguments lack merit. Just as a request about Henry's "arrests" did not mean only those arrests which resulted in a conviction, a request for "all video recordings . . . that Plaintiff has captured of police interactions" did not mean only those recordings which related to a particular recent incident.

The email correspondence cited by Plaintiffs does not change matters.  First, Defendants did *not* narrow the request's scope simply by putting Plaintiffs on notice that they knew of at least some recent videos that had not been produced.  (Doc. #76-2 at 17).  Rather, Defendants merely identified to Plaintiffs that they believed, at the very least, that "Henry may have additional video footage of various police interactions captured as recently as a week or two ago."  (*Id.* at 3). Second, absent an agreed-upon modification, it is the discovery request itself that controls the scope of the responding party's obligation.  Finally, the correspondence exchanged resulted in Plaintiffs identifying the existence of multiple recordings, at least one of which was made months before the request was served: 1) the video of "an incident with the state police [months earlier] in January which was recorded on MSP dash video"; 2) the video where "Heather facebook lived [Henry's] commentary on this incident";[5] 3) the "VanCuren/Cops video"; and 4) a phone recording by Henry of an interaction involving police officer(s) and a K-9 from the City of Flint and Mt. Morris.  This is inconsistent with the assertion that the request only sought two videos related to a recent incident.

The Court also has concerns about Plaintiffs' conduct in the second deposition on August 13, 2018, as he fought to avoid answering a simple question about his recording of prior police interactions:

> Q. Have you recorded any other altercations or interactions with the police?
> A. That I had -- that I had?

---

[5] Regarding this video, Plaintiff wrote, "I'll try to download it but I don't know much about facebook [sic], so no promises." (Doc. #84, at 3).  Even a cursory Google search indicates that downloading a person's own Facebook or Facebook Live Videos is relatively simple.  In the alternative, one could have also recorded the video as it played on-screen or sent a link to the original video hosted on Facebook.  At any rate, the video apparently has since been produced. (Doc. #76-2 at 28).

Q. Yes.
A: No. Besides -- hold on.  Hold on.  Hold on.  You're talking about this year?

Q. Ever.
A. Since this incident?

Q. Ever.

(Doc. #76-2 at 44-47).  Also concerning is that Plaintiff's counsel made an improper objection

during the deposition and improperly offered a factual averment which, to make matters worse,

also turned out to be inaccurate.  In response to Defendants' repeated questions about *any* videos

that Henry recorded or has of police interactions, his counsel interjected:

> MR. RADNER: You don't have to say anything.  Any videos he has we've given
> you.
> THE WITNESS: Yep.
>
> MR. RADNER: That's it.  We've already answered that interrogatory and those
> requests.  Any videos he has, we've given you.

(Doc. #76-2, Ex. H, Henry 2nd Dep. at 186:19-24).  Henry, following his attorney's lead, confirmed

the statements.  Not only is this conduct prohibited, *see* Fed. R. Civ. P. 30(c)(2) ("A person may

instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

limitation ordered by the court, or to present a motion under Rule 30(d)(3).");  Deposition, Legal

Information Institution, Cornell Law School, https://www.law.cornell.edu/wex/deposition

("Lawyers may not coach their clients' testimony . . . ."), but here, it resulted in the lawyer offering

a factual statement that turned out to be untrue.[6]  Although Plaintiff affirmed that he had turned

over "any video" he had of police interactions, he later unequivocally contradicted that testimony:

---

[6] While the Court is not accusing counsel of intentionally making a false statement, this example
illustrates the distinct roles of a lawyer and his client, and demonstrates the importance of counsel
undertaking reasonable efforts to ensure that his client (1) fully understands the discovery requests
being presented to him, and (2) has undertaken reasonable efforts to search for and produce
responsive materials.  *See e.g., Rodman v. Safeway Inc.*, 2016 WL 5791210, at *3 (N.D. Cal. 2016)
(quoting *Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*, 2013 WL 4511925, at *2 (N.D. Cal.
2013) (". . . attorneys must take responsibility for ensuring that their clients conduct a
comprehensive and appropriate document search.")) (finding that an attorney made an

A: . . . No, I haven't gave [sic] you those videos because y'all didn't ask for those specific videos. . . .

. . .

Q: . . . You haven't given me the other [videos]; correct?
A: Correct.

Q: And there are other ones; correct?
A: I have some, yes.

(Doc. #76-2, Ex. H, Henry 2nd Dep. at 187:12-14,188:3-6).

In sum, while the issue of what police interaction videos Henry does and does not possess seems to have been sorted out, his initial response to Defendants' discovery request, and his deposition testimony show that he failed to comply with his discovery obligations and the Court's prior Sanctions Order.

> b. *Although a serious sanction is warranted, the Court should exercise its discretion and impose a sanction less severe than the dismissal requested by Defendants*

Under *Regional Refuse*, four factors are relevant to a motion to dismiss brought pursuant to Fed. R. Civ. P. 37: (1) whether the non-movant's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the movant was prejudiced by the non-movant's failure to cooperate in discovery; (3) whether the non-movant was warned that failure to cooperate could

---

"unreasonable inquiry" where the attorney did not question the thoroughness of the client's search for relevant documents); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees and Restaurant Employees Intern. Union*, 212 F.R.D. 178, 221–24 (S.D. N.Y. 2003) (imposing sanctions on counsel for failure to inquire into the adequacy of client's search for relevant documents); *Markey v. Lapolla Indus., Inc.*, 2015 WL 5027522, at *19–24 (E.D.N.Y. 2015) (imposing sanctions in part because counsel was "required to conduct a more thorough investigation of the discovery in Plaintiffs' possession prior to [service]" and "failed to adequately oversee Plaintiff's document production . . ."); *Phinney v. Paulshock*, 181 F.R.D. 185, 203 (D.N.H. 1998) ("Rule 26(g)(2) requires a certifying lawyer to make a reasonable effort to assure that the client has provided all the information and documents that are available to him that are responsive to the discovery demand."); *Knickerbocker v. Corinthian Colls.*, 298 F.R.D. 670, 678 (W.D. Wash. 2014) ("Counsel bear responsibility for coordinating their clients' discovery production" and failure to do so may warrant sanctions.") (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched.").

lead to dismissal; and (4) whether less drastic sanctions were imposed or considered.  842 F.2d at 155.

         *i.   The first factor: Plaintiffs' failure to cooperate in discovery was due to willfulness, bad faith, or fault*

For a plaintiff's actions to be construed as bad faith, willfulness, or fault, his conduct must "display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir. 2001) (citation and quotation marks omitted).  Henry's conduct meets this standard for several reasons. First, he failed to produce *all* recordings of his police interactions despite a clear and unambiguous request for production and an admonishment from this Court that a "failure to fully cooperate in the progression of this case[] may result in additional sanctions, up to an including dismissal of [t]his case." (Doc. #52, at 6).  As explained above, Henry's argument that the request for production "could not have been deciphered" is simply not credible and does not constitute substantial justification for providing inaccurate discovery responses. (Doc. #82 at 7).

    Second, Henry claimed, without corroboration or supporting evidence, that "[a]ll other recordings Plaintiffs had in their possession were saved onto a computer that previously became infected with a virus causing all files to be corrupted and/or deleted." (Doc. #85-3 at 3); (*see also* Doc. #76, Ex. H at 186:17-18) ("Someone sent a virus to my computer where all my videos are on from the -- ").  However, no details were provided as to when the files were corrupted, how Henry knew his files had been lost as a result of a virus (as opposed to, say, a mechanical failure of the hard drive), how he knew that "someone" had sent the virus to his computer, why every video except the one he already produced was effected by the virus, whether he had attempted to have the lost files recovered, or whether he had any physical or cloud backups of the data.  Particularly given Henry's past discovery violations, his explanation is suspect.  *Cf. Tech. Recycling Corp. v.*

11

*City of Taylor*, 186 Fed. Appx. 625, 633 (6th Cir. 2006) (deeming "Plaintiffs' explanations for their failure to produce the materials sought [] uncorroborated and unbelievable" because of "evasive and nonresponsive" answers).

In short, Henry's behavior satisfies the first prong of the *Regional Refuse* test. *See, e.g.*, *Tech. Recycling Corp.*, 186 Fed. Appx. at 632-35 ("it was not unreasonable for the district court to find that plaintiffs' noncompliance was the result of willfulness, bad faith, or fault" when he repeatedly failed to comply with discovery orders, provided "uncorroborated and unbelievable" explanations for their noncompliance, and "signed affidavits stating that they had produced all requested discovery" even though they later admitted in a deposition that the "tapes produced were incomplete"); *Bradley J. Delp Revocable Trust*, 665 Fed. App'x at 521 (holding that the district court did not abuse its discretion when it found that the plaintiff's conduct "demonstrated an intent to thwart judicial proceedings or, at least, a reckless disregard for the effect of his conduct on those proceedings" because the plaintiff "offer[ed] incredible hearing testimony . . . that . . . [is] so squarely contradicted by the record . . . that this Court cannot reasonable ascribe the contradictions to faulty recall or innocent misstatements") (citation and quotation marks omitted).

### ii.   The second factor: Defendants were prejudiced by Plaintiffs' conduct

The second factor of *Regional Refuse* looks at whether the movant was prejudiced by the non-movant's conduct, specifically whether the former "waste[d] time, money, and effort in pursuit of cooperation which [the latter] was legally obligated to provide." *Harmon*, 110 F.3d at 368.  Clearly, Defendants suffered at least some prejudice as a result of Plaintiffs' failure to fully and completely cooperate with discovery requests regarding the videos.  At a minimum, Defendants were forced to expend time and resources that could have been avoided if Plaintiffs had cooperated from the beginning.  *See Bradley J. Delp Revocable Trust*, 665 Fed. App'x at 523

(finding that the "record clearly demonstrates that Defendants were 'prejudiced by the dismissed party's conduct'" because the plaintiff "wasted Defendants' time, money, and effort in Defendants' pursuit to reveal the truth" about documents produced by the plaintiff).

In addition, while videos of Henry's police contacts unrelated to the videotaped incident in question seem tangential to the claims and defenses in this case, they are at least potentially relevant because they could show, for example, whether Henry had a *modus operandi* of intentionally sensationalizing his police contacts. (Doc. #85 at 4). Also, given Henry's admission that he no longer possesses at least some of his police contact videos, Defendants have been prejudiced by not having access to that material.

> ### iii.  *The third factor: Plaintiffs had already been warned that failure to cooperate in discovery could result in dismissal*

The third factor of the *Regional Refuse* test turns on whether the non-movant was warned that failure to cooperate in discovery could result in dismissal.  This Court had previously taken note of a "clear and persistent pattern of Henry failing to provide truthful information requested of him during discovery in this case, and there can be no debate that the [Defendants] were hamstrung in their ability to effectively prepare for Henry's deposition . . . ."  (Doc. # 52 at 6).  As a result, the Court "explicitly admonished" Henry in the Sanctions Order that "the pattern of discovery violations detailed herein will not be countenanced, and **<u>any further discovery violations or failure to fully cooperate in the progression of this case[] may result in additional sanctions, up to and included dismissal of his case.</u>**"  (*Id.*) (emphasis in original).

> ### iv.  *The fourth factor: less drastic sanctions were already imposed*

Whether less drastic sanctions were considered or imposed is the fourth and final factor of the *Regional Refuse* test.  As described above, the Court has already sanctioned Henry, explaining why his conduct in discovery was a violation of his obligations as a litigant, and admonishing him

that additional sanctions, up to and including dismissal, could be imposed for future violations. Independent of the *Regional Refuse* test required for dismissals under Fed. R. Civ. P. 37, courts also have the inherent power to sanction parties for acting in bad faith or with willfulness to "hamper[] the enforcement of a court order." *Williamson*, 826 F.3d at 302-303.  This Court, in its April 4, 2018 Sanctions Order, ordered Henry to desist from continued discovery violations, submit to a continued deposition, and fully cooperate in the progression of this case.  As detailed above, notwithstanding that warning, Henry again failed to comply with his discovery obligations, and an appropriate sanction is therefore warranted.

### v. *Determining the Appropriate Sanction*

Although the Court may have the discretion to dismiss this action as a sanction for Plaintiffs' discovery conduct, it is reluctant to resort to such a drastic and severe measure for several reasons.  First, although the Court previously warned Plaintiffs about discovery violations and imposed sanctions, those sanctions were relatively minor, leaving room, depending on the infraction, for additional and more serious sanctions short of dismissal.  Second, although Plaintiffs failed to fully cooperate with the Defendants on the production of the requested videos, it appears that Plaintiffs have now produced the videos in their possession, and those videos seem of relatively little evidentiary value, especially since Plaintiffs have produced a video of the incident in question.  Finally, while a party's obligation is always to ensure the accuracy and completeness of any discovery responses it serves, Plaintiffs' provision of supplemental discovery responses, the completeness of which Defendants do not concretely challenge,[7] suggests something less than the level of bad faith argued by Defendants.

---

[7] Defendants' position seems to be that in light of Henry's prior discovery conduct, "**it is impossible to ascertain whether [he] is being truthful now**."  (Doc. #85 at 6) (emphasis in original).  Moreover, while the two supplemental responses Defendants did highlight – Nos. 5 and 15 – are certainly "newer" disclosures which should have been provided earlier in discovery, they

Accordingly, the Court finds that an outright dismissal of Plaintiffs' case would be too harsh of a sanction. Rather, the Court should issue an adverse inference instruction to the jury (assuming the case goes to trial). As defense counsel suggested at the hearing on the instant motion, the jury should be instructed that the missing videos would have shown Henry behaving similarly to the manner in which he behaved in the other police interaction videos, including the one of the incident in question. Plaintiffs should also be ordered to produce any responsive videos they have in their possession.

Finally, Rule 37 requires the district court to award fees when a party fails to obey a discovery order unless the failure was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P 37(b)(C) ('[T]he court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expense, including attorney's fees, caused by the [discovery] failure . . . .") (emphasis added). Nothing the Plaintiffs have thus far provided indicates that the failure was substantially justified.[8] However, it seems undisputed that Henry's only source of income is disability, and where he has now provided what appear to be thorough discovery responses, and the Court has recommended imposing an adverse inference instruction as a sanction for his conduct, the Court declines to impose a monetary sanction.

---

were not disclosed "**for the first time**" in Henry's supplemental responses, as Defendants contend. (*Id.*) (emphasis in original). Instead, the transcript of Henry's deposition shows that he identified this same information a few weeks earlier. (*Compare id.* with and Doc. #77 at 20-21). Again, while the Court understands Defendants' skepticism, and the effort it took to obtain Henry's compliance, he does seem to have provided detailed and thorough responses at this point.

[8] Plaintiff argues that Rule 37 sanctions are inappropriate because there must have been a court order compelling discovery that was violated. *Badalamenti v. Dunham's, Inc.*, 118 F.R.D. 437 (E.D. Mich. 1987). However, the Plaintiff was already subject to an order compelling discovery, (*see* Doc. #22), and the Sanctions Order, (*see* Doc. #52), which ordered him to desist from further discovery violations and to fully cooperate in the progression of the case. Furthermore, the Court retains the inherent power to sanction.

vi. *Plaintiffs' request for costs and attorneys' fees is not justified under the circumstances*

The Plaintiffs, in response to the motion to dismiss, have asked for an award of costs and attorneys' fees because they believe that Defendants "plotted" a "deceitful scheme" to "dismiss this case with improper litigation tactics."  (Doc. #82 at 14); *see* 28 U.S.C. § 1927 (imposing liability on attorneys who multiply "the proceedings in any case unreasonably and vexatiously"); *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986) (authorizing fees under 28 U.S.C. § 1927 where "an attorney knows or reasonably should know that a claim pursued is frivolous"). However, for the reasons stated above, the Court sees nothing improper whatsoever about Defendants' instant motion to dismiss.  Indeed, Defendants' request for a dismissal of this action was a close call.

## V.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss **[76]** be **GRANTED IN PART AND DENIED IN PART.**  Specifically, Defendants' request to dismiss this action should be denied, but, in the event of trial, the Court should provide the jury with an adverse inference instruction regarding any missing videos that Defendants requested.  The Court should order Plaintiffs to forthwith produce any recordings of police interactions in their possession that they have not already produced.  Finally, Plaintiffs should be instructed that any further violation of their discovery obligations or of a Court order will subject them to sanctions, up to and including dismissal of this action.

Dated: December 6, 2018                    s/David R. Grand
Ann Arbor, Michigan                        DAVID R. GRAND
                                           United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Any such objections shall not exceed 15-pages, double-spaced. Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 6, 2018.

> s/Eddrey O. Butts
> EDDREY O. BUTTS
> Case Manager