UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID HENRY, et al.,

                    Plaintiffs,             Civil Action No. 17-cv-11061
                                            Honorable Paul D. Borman
v.                                    Magistrate Judge David R. Grand

CITY OF FLINT, et al.,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO EXLUDE TESTIMONY OF PLAINTIFFS' EXPERT DR. AARON WESTRICK [95]

Before a retained expert witness may testify at trial, he must first provide the opposing party with a report containing "a complete statement of all opinions [he] will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). In this case, the expert report authored by plaintiffs' expert witness, Dr. Aaron Westrick, Ph.D. ("Dr. Westrick"), clearly fails to satisfy that requirement. Indeed, Dr. Westrick's expert report contains no reasoning whatsoever, and instead simply lists his opinions alongside assertions that they are based on his review of the evidence, his training and experience, various unspecified standards, protocols and procedures, and his "synthesis" of this information. Defendants have moved to exclude Dr. Westrick's testimony, and that motion was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). (Doc. #108). Because Dr. Westrick's expert report fails to comply with Rule 26(a)(2)(B)(i)'s requirements, and for the other reasons discussed below, the Court should grant defendants' motion.

A.      **Procedural and Factual Background**

This case arises out of an incident that occurred on the evening of November 23, 2016, at

1

the home of Plaintiffs David Henry and Heather Williams ("Plaintiffs"). Pursuant to a felony warrant, City of Flint (the "City") police officers Michael Henige, Sean Coe, and Nikolas White (collectively, the "Officers") had arrived at an abandoned home near the Plaintiffs' house in an attempt to apprehend an individual unrelated to Plaintiffs. Noticing the Officers' lights, Henry went onto his porch to "investigate the source." He and at least one of the Officers then became involved in a verbal, and later, physical confrontation, with much of the incident being captured on a video. Henry alleges that Henige encouraged him to "come over here and we'll talk man to man." Henry further alleges that Henige alluded to Henry's home becoming a "special project," which he interpreted to mean the object of increased police attention. Henry responded by telling Henige, "[b]ring it on, then you'll find out who I am." At this time, Henry claims that he was standing on his front porch and began retreating toward his house when the officers tackled him to the ground and discharged pepper spray into both Plaintiffs' faces. Officer Henige then handcuffed Henry and arrested him. Henry alleges Henige applied the handcuffs so tightly that they broke the skin on his wrist and caused loss of sensation in his hands. Moreover, Henry alleges that the Officers failed to buckle him into the rear seat of the squad car and failed to provide him with medical care when he suffered a seizure on the way to the police station.

Henry was then charged with disorderly conduct and resisting arrest. Henry contends that his criminal trial was scheduled for February 7, 2017, but that the Officers failed to appear for trial, resulting in the charges being dismissed. On April 4, 2017, Plaintiffs filed this action under 42 U.S.C. § 1983 against the City and the three Officers. The operative amended complaint alleges that Henry was subjected to an unlawful and retaliatory arrest, and that the Officers used excessive force against the Plaintiffs, in violation of their rights under the First and Fourth Amendments to

the United States Constitution.[1]  (Doc. #30).

In support of their claims against the Officers, Plaintiffs produced the "Expert Report" of Dr. Aaron Westrick, an expert in "use-of-force," "law enforcement policy," and what he calls "Police Phenomenology."  (Doc. #95-2).  Dr. Westrick is a "highly decorated police officer," with thirty-five years of experience in policing and armor systems marketing and research.  (*Id*. at 3). He received his Bachelor's degree in Social Science and Criminal Justice, his Master of Science degree in Criminal Justice, and his Doctorate of Philosophy degree based on Studying Police Shootings on Body Armor.  (*Id*.).  He has testified as an expert witness in use-of-force and law enforcement policy previously, and has published writings on the topic.  (*Id*.).  However, he has also had his testimony excluded in a prior Eastern District of Michigan case for submitting a deficient expert report that offered "only a version of the facts using strong adjectives favoring Plaintiff and states an opinion regarding the officers' conduct that is not helpful to the jury and is purely speculative [and which] contain impermissible legal conclusions."  *Mutafis v. Markel*, No. 11-13345, 2013 WL 119464, at *4 (E.D. Mich. Jan. 9, 2013).

Here, Dr. Westrick's report is of no evidentiary value, as it contains nothing more than his bald opinions, many of which are also inadmissible legal conclusions.  Dr. Westrick offers the following six opinions:

1. The officers (specifically Coe) goaded Mr. Henry to walk-off his property to settle the situation, "man to man".  The officers did not heed their police training regarding interaction with citizens (MCOLES), department policy based on law, best practice and established proper police de-escalation interaction with Mr. Henry.

2. Given the totality of the circumstances the forceful apprehension arrest of Mr.

---

[1] Plaintiffs' amended complaint also contains a *Monel* claim against the City, alleging that it failed to adequately train, supervise, and discipline its police officers, and failed to adequately investigate citizen complaints of police misconduct.  (Doc. #30 at 13).  However, pursuant to the parties' stipulation, the City was dismissed as a defendant on January 15, 2019.  (Doc. #98).

Henry was done without probable cause and was not reasonable.

3. Mr. Henry needlessly suffered harm during the arrest.

4. The application of an OC spray Aerosol Subject Restraint on Mr. Henry was not reasonable (or necessary) given the totality of the circumstance.

5. After Mr. Henry and Ms. Williams were sprayed, neither was rendered aid from the officers in a departure from established police procedures.

6. The actions of the Flint police constituted unreasonable disregard for their safety and departs from established police protocols.

(Doc. #95-2 at 4–5).

Despite Rule 26(a)(2)(B)(i)'s requirement that an expert report include "a complete statement of all opinions the witness will express **and the basis and reasons for them**." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added), nowhere in Dr. Westrick's report does he even come close to offering reasons for his opinions. After describing his understanding of the facts, providing his professional background, and identifying the materials he reviewed and relied on, Dr. Westrick gets to his opinions and the purported "reasoning" behind them. But instead of actually providing any reasoning, Dr. Westrick merely states his opinions in a "Summary of Opinions" section, and then restates them in his "Opinions and Reasoning" section, adding only that they are "based on [his] review of the facts of this case and applying [his] training and experience as well as the MCOLES standards."[2] Finally, in the "Conclusions" section of his report, Westrick again simply restates his opinions. Dr. Westrick's handling of his first opinion is emblematic of his failure to include any reasoning whatsoever in his report:

---

[2] The only exceptions to this verbiage are immaterial. With respect to his third opinion, Dr. Westrick states, "this opinion is based upon my review of the facts of this case and applying my training and experience as well as the MCOLES standards." As to his sixth opinion, Dr. Westrick states that it is "based on my synthesis of the available information using my knowledge, training, and experience as well as the MCOLE standards."

## IV. Summary of Opinions

I offer the following opinions to a reasonable degree of professional and scientific certainty concerning David Henry's arrest:

1. **The officers (specifically Coe) goaded Mr. Henry to walk-off his property to settle the situation, "man to man". The officers did not heed their police training regarding interaction with citizens (MCOLES), department policy based on law, best practice and established proper police de-escalation interaction with Mr. Henry.**

## V. Opinions and Reasoning

I offer the following opinions to a reasonable degree of professional and scientific certainty concerning the injury and arrest of David Henry:

1. **The officers (specifically Coe) goaded Mr. Henry to walk-off his property to settle the situation, "man to man". The officers did not heed their police training regarding interaction with citizens (MCOLES), department policy based on law, best practice and established proper police de-escalation interaction with Mr. Henry.**

   Based upon my review of the facts of this case and applying my training and experience as well as the MCOLES standards, it is my opinion that the officers did not apply established interaction training techniques in accordance with their training and MCOLES training principles. It is my opinion that officers were goading in order to improperly and forcefully arrest him in a public place.

## VIII. Conclusions

Based upon my experience, training, and knowledge combined with my review of the Henry materials referenced above, it is my opinion that:

1. **The officers (specifically Coe) goaded Mr. Henry to walk-off his property to settle the situation, "man to man". The officers did not heed their police training regarding interaction with citizens (MCOLES), department policy based on law, best practice and established proper police de-escalation interaction with Mr. Henry.**

Dr. Westrick never indicates what "MCOLES" standards the Officers violated.  He never indicates what "department policy" the Officers violated, or on what "law" those policies were based.  He never indicates what "best practices" the Officers violated.  And, he never indicates

5

what "established proper police de-escalation interaction" standards the Officers violated.  Given his failure to identify the particular standards the Officers allegedly failed to "heed," it is not surprising that Dr. Westrick also failed to offer any reasoning behind his first opinion, or to explain the methodology he used to reach that opinion.[3]  Dr. Westrick's other opinions are presented in the exact same conclusory manner.

On January 9, 2019, the Officers filed an amended motion to exclude Dr. Westrick's testimony.  (Doc. #95).  The motion was fully briefed (Docs. #100, #106), and was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b).  (Doc. #108).  Given the facial deficiencies of Dr. Westrick's report, the Court perhaps should have simply granted the Officers' motion to exclude his testimony based only on the briefs.  But Plaintiffs requested oral argument, so the Court indulged them and held a hearing.  (Doc. #100 at 1).  At the hearing, Plaintiffs made a series of weak arguments.  First, they claimed the Officers' expert report was at least equally deficient as their own.  But the Court shot down that attempt to deflect, because the Officers' expert report was not before the Court, and more importantly, because each party's expert report stands or falls on its own merits, not on its relative worthlessness.  Next, Plaintiffs argued that the fact that the Officers took Westrick's deposition shows that they understood his opinions and reasoning, and that if the Officers believed Westrick's report to be so deficient, they should have moved to exclude his testimony right away, rather than deposing him.  But this argument turns Rule 26(a)(2) on its head, forcing the opposing party to have to work just to attempt to coax out the expert's reasoning, when Rule 26 requires the expert to provide his reasoning in his report in the first place.  Finally, Plaintiffs suggested that Dr. Westrick's deposition testimony,

---

[3] As to his "methodology," Dr. Westrick simply asserts, "I employed methods which I used in my professional non-litigation activities and these methods are standard methods used by other professionals in the field."  (Doc. #95-2 at 2).

the full transcript of which the Officers had attached to their motion, made clear the reasoning behind his opinions, and that in ruling on the Officers' motion, the Court should consider that testimony in conjunction with the contents of Dr. Westrick's report.

The Court permitted Plaintiffs to file a supplemental brief regarding Dr. Westrick's deposition testimony, but specifically instructed them **not** to simply file a chart identifying portions of the transcript that pertained to Dr. Westrick's various opinions. Instead, the Court instructed them to explain *how* that testimony supplied the reasoning missing from Dr. Westrick's report. Yet Plaintiffs did precisely what they were instructed not to do, once again putting the onus on the Officers and the Court to attempt to understand exactly how Dr. Westrick gets from the information he reviewed to his opinions. (Doc. #113).[4]

### B.       Legal Standard

Federal Rule of Civil Procedure 26(a)(2) initially requires disclosure of expert testimony. An expert must provide a written report if he has been "retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). That report must contain, among other things, "a complete statement of all opinions the witness will express **and the basis and reasons for them**." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). Various Federal Rules of Evidence apply when evaluating the admissibility of expert testimony. Federal Rule of Evidence 702 specifically addresses the admissibility of expert witness testimony, and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[4] Because the foregoing clearly shows that Dr. Westrick's report does not include "the basis and reasons" for his opinions as required by Rule 26(a)(2)(B)(i), the Court should, on that basis alone, grant the Officers' instant motion to preclude Dr. Westrick's testimony at trial. Exclusion of his testimony is also warranted for the other reasons discussed below.

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The United States Supreme Court has instructed that Rule 702 requires district courts to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993). The rule imparts a "gatekeeping" responsibility on district courts to exclude unreliable and irrelevant expert testimony from trial.  *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001) (quoting *Daubert*, 509 U.S. at 597, 113 S. Ct. at 2798).

As subsection (a) to Rule 702 provides, to be admissible, expert testimony must assist the trier of fact in understanding the evidence or determining a material fact in question.  Fed. R. Evid. 702(a); *see also Daubert*, 509 U.S. at 592-93, 113 S. Ct. at 2796.  Moreover, like all relevant evidence, otherwise admissible expert opinion testimony may still be excluded:

if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

Expert evidence is not helpful and is improperly admitted when it addresses matters within the understanding or common knowledge of the average juror or invades the province of the jury. *See United States v. Thomas*, 74 F.3d 676, 684 n. 6 (6th Cir.1996) (abrogated on other grounds by *Morales v. American Honda Motor Co.*, 151 F.3d 500 (6th Cir. 1998)).  As stated by the Sixth Circuit in *Berry v. City of Detroit*: "If everyone knows [a particular fact], then we do not need an

8

expert because the testimony will not 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" 25 F.3d 1342, 1350 (6th Cir.1994) (quoting Fed. R. Evid. 702). Expert testimony based on scientifically valid principles will satisfy Rule 702; whereas, "an expert's subjective belief or unsupported speculation will not." *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997) (citation omitted) (abrogated on other grounds by *Morales*, 151 F.3d 500).

Federal Rule of Evidence 704 abolishes the "ultimate issue" rule which precluded opinion testimony merely because it embraced an ultimate issue. Fed. R. Evid. ("An opinion is not objectionable just because it embraces an ultimate issue."). However, the Advisory Committee Notes specifically warn that the rule "does not lower the bar so as to admit all opinions," because "[u]nder Rule 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time." Fed. R. Evid. Advisory Committee note. The notes go on: "These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . ." *Id.* As the caselaw discussed below makes clear, where the expert's opinion amounts to merely defining legal terms and telling the jury whether certain conduct violated or was consistent with those legal terms, that testimony is impermissible.

### C. Analysis

As set forth above, Westrick provided opinions regarding the Officers' interaction with Henry before the incident became physical, the propriety of Henry's arrest, and the reasonableness of the Officers' conduct during and after the arrest. Westrick opines that Officers did not comply with proper police protocols in multiple ways: they 'goaded' Henry off of his property instead of de-escalating the situation, they failed to give aid to Henry after applying pepper spray, and, broadly, they showed "unreasonable disregard" for the safety of Henry and Williams. He also

asserts that Henry's arrest and application of pepper spray were unreasonable, and that Henry "needlessly suffered harm" as a result.

Dr. Westrick's testimony must be excluded for two reasons: (1) Plaintiffs have not shown that Dr. Westrick's opinions are based on sufficient facts or data, and are the product of reliable principles and methods that he reliably applied; and (2) many of Dr. Westrick's opinions constitute inadmissible legal conclusions.

### i.      *Plaintiffs Have Not Shown Dr. Westrick's Opinions are Reliable*

Because Dr. Westrick's report fails to provide any reasoning to support his opinions, the Court cannot find that they are based on sufficient facts and data, or that they are the product of reliable principles and methods that Dr. Westrick reliably applied, as required by FRE 702(b).  Dr. Westrick's report spans six pages, half of which are devoted to providing his understanding of the facts, a list of information he reviewed, and his professional background.  The other pages merely state Dr. Westrick's opinions, re-state them, noting that they are based on his review of the facts and his training and experience, and then re-state them again, as his "Conclusions."

Dr. Westrick's first opinion, in which he opines that the Officers "goaded" Henry off of his property in violation of their training and department policy, is emblematic of this problem which permeates his entire report.  (Doc. #95-2 at 5).  First, neither this opinion nor the subsequent "reasoning" mention any particular facts or data.  The opinion recites that the Officers "goaded" Henry, but Dr. Westrick's report never identifies the specific training, policy, or law the Officers' behavior allegedly violated.  (*Id*. at 5).  Similarly, Dr. Westrick's fifth opinion states that the Officers' failure to render aid after pepper spraying Plaintiffs was "a departure from established police procedures," while his sixth opinion states that the Officers' actions "constituted unreasonable disregard for [Henry's] safety and departs from established police protocols."  (*Id*.).

10

Again, however, nowhere in Dr. Westrick's three separate assertions of these opinions does he mention any particular "procedures" or "protocols" that were violated, or explain how he reached his conclusions.

Rather than offering any analysis, Dr. Westrick includes only a brief paragraph of purported "reasoning" after each of his six opinions, but actually he provides no reasoning whatsoever. Instead, Dr. Westrick simply asserts that the opinions are "[b]ased upon my review of the facts of this case and applying my training and experience as well as the MCOLES standards, it is my opinion that . . ." (Doc. #95-2 at 5–6).[5] This is not "analysis," but rather, Dr. Westrick's own say-so. Yet, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (citing *Salgado v. Gen. Motors Corp.*, 150 F.3d 73, 742 n. 6 (7th Cir. 1998)). "[A]n expert opinion must 'set forth facts' and, in doing so, outline a line of reasoning arising from a logical foundation." *Id.* (citing *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 657 (6th Cir. 2005)). Excluding an expert's *ipse dixit* opinion testimony maintains the integrity of *Daubert*'s requirements because "[i]f admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).

---

[5] The only exceptions to this verbiage are immaterial variations. *See supra* at 4 fn. 3.

In short, because Dr. Westrick's report fails to provide any reasoning for his opinions, the Court cannot find that they are the result of him reliably applying reliable principles and methods to sufficient facts and data.  Thus, the Officers' motion to exclude his testimony should be granted.

ii.     *Many of Dr. Westrick's Opinions are Inadmissible Legal Conclusions*

The Court should also preclude Dr. Westrick from offering Opinions 2-4 and 6 because those opinions offer inadmissible legal conclusions.

Applying the above rules and standards, courts have permitted qualified experts to testify about discrete police-practice issues when their testimony will aid the trier of fact.  *See Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004).  In *Champion*, the Sixth Circuit concluded that the trial court did not err in allowing the plaintiff's expert to testify in a civil rights action alleging that officers used excessive force where the witness testified about "the continuum of force employed by officers generally, the specific training the [defendant] Officers received, and [the expert's] opinion that if the witnesses' testimony is credited, the Officers' actions violated nationally recognized police standards governing excessive force."  *Id.* at 908.  In contrast, in *Berry v. City of Detroit*, the Sixth Circuit held that the district court erroneously admitted expert testimony opining that certain conduct by the defendant constituted "deliberate indifference," concluding that this testimony improperly expressed the ultimate *legal conclusion* at issue in the case.  25 F.3d 1353-54.  The court explained: "'[D]eliberate indifference' is a legal term, as the questioning of [the expert] indicated.  It is the responsibility of the court, not testifying witnesses, to define legal terms.  The expert's testimony in this regard invaded the province of the court."  *Id.* at 1353.

In *Berry*, the Sixth Circuit relied on the Second Circuit's decision in *Hygh v. Jacobs*, 961 F.2d 359 (1992), an excessive force case.  The Second Circuit found "troubling" the plaintiff's

expert opinions that the defendant's conduct was not "justified under the circumstances," not "warranted under the circumstances," and "totally improper." *Hygh*, 961 F.2d at 364. In determining the expert testimony should have been excluded, the court reasoned:

> Even if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard – explicit or implicit– to the jury. [] Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury.

*Id.* (internal citations omitted).

Plaintiffs allege that Henry's arrest was unlawful and that the Officers used excessive force against them in violation of their Fourth Amendment rights. All of Westrick' opinions bear on the propriety of the Officers' conduct actions during the incident in question. The success of Plaintiffs' claims depends on whether the jury finds the Officers' actions violated the Fourth Amendment, which implicates several standards and tests in Fourth Amendment jurisprudence. Among the issues for the jury to decide are questions of probable cause, excessive force, and evaluations of the totality of the circumstances during Henry's arrest.

An expert may not offer opinion testimony that is tantamount to instructing the jury on the law. "Although an expert's opinion may 'embrace[] an ultimate issue to be decided by the trier of fact[,]' the issue embraced must be a factual one." *Barry*, 35 F.3d at 1353 (citing Fed. Rd. Evid. 704(a)). "The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury. This invades the province of the court to determine the applicable law and to instruct the jury as to that law." *Torres v. Cty. of Oakland, et al.*, 758 F.2d 147, 150 (6th Cir. 1985) (internal quotations omitted). In his report, Dr. Westrick draws several inadmissible legal conclusions.

In Opinion 2, Dr. Westrick opines that "[g]iven the totality of the circumstances the

forceful apprehension arrest of Mr. Henry was done without probable cause and was not reasonable." (Doc. #95-2 at 5). At least from an admissibility perspective, this opinion is fundamentally flawed in multiple respects. First, it invokes the "totality of the circumstances" test, which applies to the Fourth Amendment, as state officials must consider all factors to determine whether probable cause exists. By mirroring the language courts use to instruct jurors, this aspect of Dr. Westrick's opinion draws a legal conclusion and overlaps with law on which the Court will instruct the jury. In *Alvarado v. Oakland Cty.*, the court excluded statements from an expert regarding whether an officer's conduct was "unreasonable under the totality of the circumstances known to him at the time." 809 F.Supp.2d 680, 691 (E.D. Mich. 2011). Dr. Westrick's analogous opinion is similarly impermissible here.

Dr. Westrick's opinion that the Officers lacked probable cause to arrest Henry also constitutes an improper legal conclusion. "Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury . . ." *Berry*, 25 F.3d 1353–54. The Fourth Amendment requires probable cause for an arrest, so this legal standard ties directly into the ultimate issue of Henry's complaint. The difference between an expert testifying to crucial facts or circumstances and testifying to a legal conclusion is nuanced, but important. "We would not allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we would allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact)." *United States v. Eberle*, No. CR. NO. 08 20139, 2008 WL 4858438, at *1–2 (E.D. Mich. Nov. 10, 2008). Similarly, while Westrick could opine that specific police actions did not conform to specific police policies,[6] he may not opine that the Henry's arrest lacked probable cause. *DeMerrell v. City*

---

[6] While Westrick could have offered such an opinion, as shown above, his first opinion failed to

14

*of Cheboygan*, 206 F. App'x. 418, 426 (6th Cir. 2006) ("testimony [that a reasonable officer would not have concluded probable cause existed] also expresses a legal conclusion, going beyond 'stating opinions that suggest the answer to the ultimate issue.'").

Plaintiffs argue that Westrick's opinion that Henry was arrested "without probable cause" is not an improper legal conclusion because police officers receive training to identify probable cause for arrests, then rely on that training in their daily work. (Doc. #100 at 22). Thus, Plaintiffs claim Dr. Westrick's use of the term "probable cause" speaks to a trained police officer's factual determination, not a legal conclusion. *Id.* Regardless, Dr. Westrick's opinion testimony on probable cause should be excluded because it would be likely to confuse the jury, and would potentially conflict with the Court's instruction on the concept of probable cause. Fed. R. Evid. 403. Westrick's use of the phrase "totality of the circumstances," the legal scope of considerations for probable cause, further adds to the likelihood of confusion. "Even if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury." *Berry*, 25 F.3d at 1354 (quoting *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (internal citations and parenthetical information omitted)).

Opinion 2 is also objectionable because, in judging the "reasonableness" of Henry's arrest, it offers yet another impermissible legal conclusion. In *Alvarado*, this Court refused to allow an expert to testify that an officer's use of force "served no objectively reasonable purpose." 809 F.Supp.2d at 691. As an opinion on the ultimate legal question, Dr. Westrick should not be permitted to offer this opinion testimony at trial.

Dr. Westrick's Opinion 3 also contains improper legal conclusions about the necessity of

---

do so.

the force used by the Officers.  Specifically, Dr. Westrick opines, "Mr. Henry needlessly suffered

harm during the arrest."  Courts regularly exclude testimony about the necessity of force or harm

during an arrest because such testimony improperly expresses legal conclusions.  For instance, in

*DeMerrell*, 206 F. App'x. at 426, the court excluded an expert's opinion that an officer's use of

force was "improper and unnecessary," finding that opinion constituted an "improper legal

conclusion[]."  In *Alvarado*, 809 F.Supp.2d at 691, the court disallowed an expert opinion that "the

level of force used . . . was excessive, unnecessary and served no objectively reasonable purpose"

because it expressed a "legal conclusion, which either explicitly or implicitly embrace[d] the

ultimate issue."  In short, "[b]ecause testimony about whether the officers used reasonable force is

a legal conclusion and may confuse the trier of fact, the district court is within its sound discretion

to exclude it," *Hubbard v. Gross*, 199 F. App'x 433, 443 (6th Cir. 2006), and the Court here should

exclude Dr. Westrick's testimony.

      In Opinion 4, Dr. Westrick opines that the use of pepper spray against Plaintiffs "was not

reasonable (or necessary) given the totality of the circumstance" [sic].  (Doc. #95-2 at 6).[7]  As

discussed above, these are legal conclusions that expert witnesses may not testify about.  *Alvarado*,

809 F.Supp.2d at 691.  Moreover, the jury is tasked with deciding the reasonableness of the

Officers' behavior and whether they used excessive force.  Thus, in this opinion, Dr. Westrick

impermissibly "weigh[s] the evidence, find[s] the facts, appl[ies] the law . . . and resolve[s] the

case."  *Gregg v. Hatmaker*, No. 3:11-CV-348, 2013 WL 7141737, at *4 (E.D. Tenn. Mar. 15,

2013).  Again, he should not be permitted to offer this testimony at trial.

---

[7] In the "Reasoning" section of his report, Westrick asserts that because the use of the pepper spray
was unreasonable, it "represents excessive force in the context of this matter."  (*Id.*).  To the extent
Plaintiffs argue this assertion is part of Westrick's opinion, it should be disallowed for the same
reasons explained above.  *See Alvarado*, 809 F.Supp.2d at 691.

Finally, in Opinion 6, Dr. Westrick opines that the police showed "unreasonable disregard" for Plaintiffs' safety.  Again, while an expert may opine as to whether particular police conduct complied with a particular standard – a factual issue – he may not testify as to the "reasonableness" of an officer's conduct – a legal issue.  *See Alvarado*, 809 F.Supp.2d at 691 (excluding statements that "the level of force used . . . served no objectively reasonable purpose," "[Officer] Simpkinson's actions . . . failed to be objectively reasonable," and "there was no reasonable belief on the part of [Officer] Simpkinson."); *see also DeMerrell*, 206 F. App'x. at 426 (excluding testimony that "it was objectively unreasonable for Officer White to shoot Mr. DeMerrel" because "objective reasonableness is the precise legal standard of *Graham* to be used in the qualified immunity inquiry of *Saucier*."); *Hubbard*, 199 F. App'x. 443 ("[b]ecause testimony about whether the officers used reasonable force is a legal conclusion and may confuse the trier of fact, the district court is within its sound discretion to exclude it.").  Dr. Westrick's opinion testimony regarding the reasonableness of the Officers' conduct should be excluded.

### iii.    Supplemental Briefs

At the hearing, Plaintiffs requested an opportunity to file a supplemental brief, to further explain the bases and reasoning for Dr. Westrick's opinions.  The Court granted this request with clear instructions for Plaintiffs to explain the analytical chains tying the materials Dr. Westrick reviewed (and his background and experience) to his opinions.  Instead, they submitted a chart which merely identifies the particular lines of Dr. Westrick's deposition that purportedly relate to his opinions, without any explanation of *how* that testimony leads to Dr. Westrick's opinions.  In their responsive supplemental brief Defendants carefully and thoroughly analyzed the passages cited by Plaintiffs, and amply showed that even taking Dr. Westrick's deposition testimony into account, his opinions should be excluded.  (Doc. #114 at 4-24).

17

Opinions 2-4 and 6 cannot be saved by Dr. Westrick's deposition testimony because, as explained above, each of those opinions embraces a legal conclusion reserved for the jury.[8]  Nor does Plaintiffs' supplemental brief provide adequate analysis underlying Opinions 1 or 5.  Opinion 1 states that the Officers "goaded" Henry in contravention of their police training and department policy.  (Doc. #95-2 at 5).  Dr. Westrick claims that officers "did not apply established interaction training techniques."  (*Id.*).  However, in none of the passages cited by Plaintiffs does Dr. Westrick identify any such "established interaction training techniques."  Indeed, the only policy he cites in support of his opinion is MCOLES 2(b)(4)(1), which directs officers to "[d]emonstrate understanding of the importance of effective communication and policing."  (Doc. #95-3 at 80).  Dr. Westrick's testimony does not show that this policy identifies established police practices of de-escalation; it only explains some of the benefits of effective communication on policing.  (*Id.*).  When asked what the Officers should have done differently, Dr. Westrick repeatedly said that they should have de-escalated the situation, (*id.* at 22, 37, 39, 44), then provided specific examples such as talking to Henry across property lines, apologizing, or doing nothing.  (*Id.* at 38–39, 120).  But none of this testimony identifies a specific actual policy or training material that identifies these techniques, and without more, Dr. Westrick's vague suggestions that the Officers should have apologized, left, or spoken to Plaintiffs across property lines, are simply additional opinions of his, not "reasoning" supporting the opinions in his report.  As such, Dr. Westrick's testimony does not cure his report's deficiencies as to this opinion.

Similarly, in Opinion 5, Dr. Westrick opines that the Officers' failure to render aid after pepper spraying Plaintiffs was "a departure from established police procedures."  However, while

---

[8] Moreover, Plaintiffs do not indicate any specific deposition testimony that supports Opinion 6, and instead simply assert that that particular opinion "follows from putting 1-5 together."  (Doc. #113 at 5).

Dr. Westrick does read from a policy requiring police officers to act reasonably in decontaminating victims who have been exposed to pepper spray, and from a manufacturer training on decontamination, neither provides specific procedures for the *timing* of the decontamination. (Doc. #95-3 at 90-92). Moreover, Plaintiffs only point to a manufacturer decontamination policy, not a particular City of Flint police department policy, and Dr. Westrick was uncertain as to whether the City's police department used pepper spray from one of the manufacturers he referenced, and whether the Officers had received training from those manufacturers. (*Id*. at 91-94). Dr. Westrick only claims that City police department policy directs officers to give first aid "consistent with training" after using chemical agents, such as pepper spray. (*Id*. at 95). Because Dr. Westrick did not identify a policy specifically outlining appropriate first aid or the first aid training the Officers received, his testimony does not provide adequate analysis for his opinion that the Officers departed from an "established" police procedure. Moreover, such testimony would be unhelpful in any event. If Plaintiffs believe a City of Flint Police Department policy exists requiring quicker aid than that provided by the Officers, they can offer it into evidence and then question the relevant fact witnesses about the Officers' conduct subsequent to the pepper spray being used. The jury would be able to determine from that evidence whether the Officers violated any such policy. Fed. R. Evid. 403. For all of these reasons, Dr. Westrick's opinion testimony on this issue should not be allowed.

### D. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the Officers' motion to exclude the testimony of Plaintiffs' expert, Dr. Aaron Westrick (**Doc. #95**), be **GRANTED**.


Dated: April 19, 2019                           s/David R. Grand
Ann Arbor, Michigan                             DAVID R. GRAND
                                                United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 19, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
